UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

SHREVEPORT DIVISION

| | | |
|---|---|---|
| **LEROY BROWN** | * | **CIVIL ACTION NO. 11-1684** |
| **VERSUS** | * | **JUDGE DONALD E. WALTER** |
| **MICHAEL J. ASTRUE, COMMISSIONER, SOCIAL SECURITY ADMINISTRATION** | * | **MAG. JUDGE KAREN L. HAYES** |

## REPORT AND RECOMMENDATION

Before the court is plaintiff's petition for review of the Commissioner's denial of social security disability benefits. The district court referred the matter to the undersigned United States Magistrate Judge for proposed findings of fact and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C). For the reasons assigned below, it is recommended that the decision of the Commissioner be **REVERSED and REMANDED for further proceedings.**

### Background & Procedural History

Leroy Brown filed the instant applications for Title II Disability Insurance Benefits and Title XVI Supplemental Security Income payments on June 15, 2009. (Tr. 101-107). He alleged disability as of October 25, 2008, because of "tendon problems in one leg." (Tr. 122, 125-126). The claims were denied at the initial stage of the administrative process. (Tr. 59-65). Thereafter, Brown requested and received an October 28, 2009, hearing before an Administrative Law Judge ("ALJ"). (Tr. 20-58). However, in a March 30, 2010, written decision, the ALJ determined that Brown was not disabled under the Act, finding at Step Four of the sequential evaluation process

that he was able to return to his past relevant work as a truck driver and driver. (Tr. 6-16).[1] Brown appealed the adverse decision to the Appeals Council. On July 29, 2011, however, the Appeals Council denied Brown's request for review; thus the ALJ's decision became the final decision of the Commissioner. (Tr. 1-3).

On September 16, 2011, Brown sought review before this court. Succinctly summarized, he contends, for a variety of reasons, that the ALJ's residual functional capacity assessment is not supported by substantial evidence.

### Standard of Review

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards. *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Where the Commissioner's decision is supported by substantial evidence, the findings therein are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's decision is not supported by substantial evidence when the decision is reached by applying improper legal standards. *Singletary v. Bowen*, 798 F.2d 818 (5th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. at 401. Substantial evidence lies somewhere between a scintilla and a preponderance. *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991). A finding of no substantial evidence is proper when no credible medical findings or evidence support the ALJ's determination. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988). The reviewing court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the

---

[1] The ALJ found, in the alternative, that Brown was able to make an adjustment to other work that exists in substantial numbers in the national economy. *Id*.

Commissioner. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (citation omitted).

## **Determination of Disability**

Pursuant to the Social Security Act ("SSA"), individuals who contribute to the program throughout their lives are entitled to payment of insurance benefits if they suffer from a physical or mental disability. *See* 42 U.S.C. § 423(a)(1)(D). The SSA defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). Based on a claimant's age, education, and work experience, the SSA utilizes a broad definition of substantial gainful employment that is not restricted by a claimant's previous form of work or the availability of other acceptable forms of work. *See* 42 U.S.C. § 423(d)(2)(A). Furthermore, a disability may be based on the combined effect of multiple impairments which, if considered individually, would not be of the requisite severity under the SSA. *See* 20 C.F.R. § 404.1520(a)(4)(ii).

The Commissioner of the Social Security Administration has established a five-step sequential evaluation process that the agency uses to determine whether a claimant is disabled under the SSA. *See* 20 C.F.R. §§ 404.1520, 416.920. The steps are as follows,

(1) An individual who is performing substantial gainful activity will not be found disabled regardless of medical findings.

(2) An individual who does not have a "severe impairment" of the requisite duration will not be found disabled.

(3) An individual whose impairment(s) meets or equals a listed impairment in [20 C.F.R. pt. 404, subpt. P, app. 1] will be considered disabled without the consideration of vocational factors.

(4) If an individual's residual functional capacity is such that he or she can

>    still perform past relevant work, then a finding of "not disabled" will be
>    made.
>
> (5)   If an individual is unable to perform past relevant work, then other factors
>       including age, education, past work experience, and residual functional
>       capacity must be considered to determine whether the individual can make
>       an adjustment to other work in the economy.

*See Boyd v. Apfel*, 239 F.3d 698, 704 -705 (5th Cir. 2001); 20 C.F.R. § 404.1520.

The claimant bears the burden of proving a disability under the first four steps of the analysis; under the fifth step, however, the Commissioner must show that the claimant is capable of performing work in the national economy and is therefore not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987). When a finding of "disabled" or "not disabled" may be made at any step, the process is terminated. *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). If at any point during the five-step review the claimant is found to be disabled or not disabled, that finding is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

## Analysis

### I.   Steps One, Two, and Three

The ALJ determined at step one of the sequential evaluation process that, despite an attempt at work, Brown had not engaged in substantial gainful activity during the relevant period. (Tr. 11). At step two, she found that Brown suffers severe impairments of left knee sprain, meniscus tear, and muscle spasm. *Id*. She concluded, however, that the impairments were not severe enough to meet or medically equal any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4, at step three of the process. (Tr. 12).

### II.  Residual Functional Capacity

The ALJ next determined that Brown retains the residual functional capacity to perform

medium work,[2] reduced by the ability to sit for up to two hours in an eight hour day, with no more than the occasional ability to climb stairs and ladders, balance, stoop, kneel, crouch, and crawl. (Tr. 12). Plaintiff challenges the sufficiency of the ALJ's residual functional capacity assessment on the grounds that it is not supported by the medical evidence or by plaintiff's testimony. Plaintiff also contends that the ALJ's residual functional capacity assessment is undermined by new evidence that he presented to the Appeals Council and to this court.

    1)    <u>Medical Chronology</u>

The medical record is relatively sparse. It begins on October 25, 2008, with an

---

[2] Medical work is defined and explained by Social Security Ruling 83-10:
> [t]he regulations define medium work as lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. A full range of medium work requires standing or walking, off and on, for a total of approximately 6 hours in an 8-hour workday in order to meet the requirements of frequent lifting or carrying objects weighing up to 25 pounds. As in light work, sitting may occur intermittently during the remaining time. Use of the arms and hands is necessary to grasp, hold, and turn objects, as opposed to the finer activities in much sedentary work, which require precision use of the fingers as well as use of the hands and arms.
>
> The considerable lifting required for the full range of medium work usually requires frequent bending-stooping. (Stooping is a type of bending in which a person bends his or her body downward and forward by bending the spine at the waist). Flexibility of the knees as well as the torso is important for this activity. (Crouching is bending both the legs and spine in order to bend the body downward and forward). However, there are a relatively few occupations in the national economy which require exertion in terms of weights that must be lifted at times (or involve equivalent exertion in pushing or pulling), but are performed primarily in a sitting position, e.g., taxi driver, bus driver, and tank-truck driver (semi-skilled jobs). In most medium jobs, being on one's feet for most of the workday is critical. Being able to do frequent lifting or carrying of objects weighing up to 25 pounds is often more critical than being able to lift up to 50 pounds at a time.

<u>Social Security Ruling 83-10</u>.

emergency room visit to treat Brown's muscle in his left leg that he injured while trying to loosen a stuck clutch in his truck. (Tr. 160-165). He presented with spasm and swelling, and described the pain in his left quadriceps as a seven on a ten point scale. *Id*. Upon examination, he was positive for deformity, ecchymosis, tenderness, and warmth. *Id*. However, he expressed no pain upon palpation, and his range of motion was intact in all extremities. *Id*. The physician diagnosed knee and leg sprain; lower leg hematoma, and prescribed Lortab. *Id*. His visit lasted but one hour. *Id*.

Plaintiff's next medical record is not until August 14, 2009, when he returned to the emergency room. (Tr. 172-176). He presented with complaints of knee pain and headaches. *Id*. His headaches began about two to three months earlier, and his knee pain began over one year ago. *Id*. He reported that his headaches occur once in the morning upon awakening, and resolve in about five minutes. *Id*. He denied numbness, weakness, loss of function in extremities, or loss of strength. *Id*. He reported that he was seeking disability. *Id*. His symptoms were mild in severity. *Id*. He was positive for weakness in an extremity, and had problems with walking. *Id*. His weakness and difficulty walking were limited to his left knee. *Id*. Upon examination, he exhibited a full range of motion. *Id*. A soft pliable mass was noted on the proximal thigh. *Id*. The physician noted a possible rupture of vastus intermedius/sartorius. *Id*. His knee extension was 3-4/5, but it was difficult to tell if he was giving good effort. *Id*. His strength in the left lower extremity was reduced to 3/5. *Id*. He was diagnosed with headache, torn lateral meniscus, muscle tear, and muscle spasm. *Id*. He received a shot and a prescription for Flexeril. *Id*.

In an August 31, 2009, initial evaluation, a physical therapist observed an obvious muscle defect. (Tr. 169). The therapist indicated that plaintiff needed orthopedic intervention, and that physical therapy would not help at that time. *Id*. The therapist further noted that considering the

muscle injury occurred some ten months earlier, it was increasingly doubtful that the muscle was salvageable. *Id*.

On December 14, 2009, plaintiff was seen by John David Googe, M.D. for an orthopedic consultation. (Tr. 177-179). Plaintiff complained of left leg and knee pain for the past 15 months. *Id*. He described the pain as severe. *Id*. Examination of the left leg showed a defect in the mid-substance of the quadriceps, and severe pain with palpation. *Id*. X-rays showed diffuse osteopenia and a complex regional pain syndrome type pattern. *Id*. Googe diagnosed a crush injury to the left leg. *Id*. He indicated the need for an MRI of the left knee to ensure that there was no intra-articular pathology. *Id*. Googe surmised, however, that this was a complex regional pain syndrome, that would necessitate nerve blocks for the left lower extremity. *Id*.

In connection with his request for review to the Appeals Council, plaintiff submitted a copy of a January 15, 2010, progress report with Dr. Googe. (Tr. 181-183). At that visit, plaintiff complained of moderate to severe, "achy" pain, that was constant. *Id*. Googe noted that the MRI confirmed a rectus femoris tear. *Id*. Examination of the leg continued to show a defect in the mid-thigh. *Id*. Brown reported difficulty walking, secondary to his inability to extend his leg. *Id*. Googe prescribed physical therapy, with range of motion exercises, and directed him to return in one month. *Id*.

Plaintiff attached an August 31, 2011, progress report from Dr. Googe as an exhibit to his brief on appeal to this court. *See* Pl. Brief, Exhs. According to that report, plaintiff suffered from decreased strength, with associated pain in his left thigh. *Id*. Brown's clinical picture remained unchanged. *Id*. Dr. Googe noted that Brown had complex regional pain syndrome-type complaints, with chronic pain in the leg. *Id*. He diagnosed quadriceps muscle tear, with residual pain. *Id*. Googe reviewed a functional capacity evaluation and impairment rating, but

felt that it was "more appropriate" to classify Brown as sedentary because of the amount of pain and strength deficit that he experienced. *Id*. In addition, Googe felt that leg elevation likely needed to be included in Brown's work restrictions. *Id*. Googe concluded that Brown should return to see him on an as needed basis. *Id*.

    2)    <u>Discussion</u>

Quoting Social Security Ruling 96-8p, the Fifth Circuit has observed that,

> a residual functional capacity (RFC) is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule. The RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities. However, without the initial function-by-function assessment of the individual's physical and mental capacities, it may not be possible to determine whether the individual is able to do past relevant work. . . . RFC involves both exertional and nonexertional factors. Exertional capacity involves seven strength demands: sitting, standing, walking, lifting, carrying, pushing, and pulling. Each function must be considered separately. In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis. . . . The RFC assessment must include a resolution of any inconsistencies in the evidence.

*Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001) (citations and internal quotation marks omitted).[3]

The instant ALJ derived plaintiff's RFC by concluding that the "medical evidence indicates that he should be able to perform a reduced range of medium work." (Tr. 13-14). However, the court does not appreciate how a non-physician may divine an RFC for reduced medium work when plaintiff's examining physicians have diagnosed a torn leg muscle and/or ligament that required pain medication. (Tr. 172-179). In this case, no physician of record

---

    [3] Although Social Security Rulings are not binding on the federal courts, *Myers, supra*, they are "binding on all components of the Social Security Administration. 20 C.F.R. § 402.35 (b)(1).

8

examined plaintiff's impairments, and quantified their effects upon his ability to perform work-related activities, during the relevant period.

The court emphasizes that the lack of a medical source statement describing the types of work that the claimant is still capable of performing does not, in and of itself, render the record incomplete. *Ripley v. Chater*, 67 F.3d 552, 557-558 (5th Cir. 1995). In *Ripley*, as here, the Commissioner argued that the medical evidence substantially supported the ALJ's decision. *Ripley, supra*. The Commissioner pointed to medical reports discussing the extent of plaintiff's injuries, including a four year history of back troubles. *Id*. However, without reports from qualified medical experts, the Fifth Circuit could not conclude that the evidence substantially supported the ALJ's residual functional capacity assessment because the court was unable to determine the "effects of [plaintiff's] conditions, no matter how 'small.'" *Id*. The only evidence that described plaintiff's ability to work was plaintiff's own testimony, which, when read in proper context, failed to support the ALJ's residual functional capacity assessment. *Id*.

The instant case is materially indistinguishable from *Ripley, supra*. The record is devoid of a medical source statement that supports the ALJ's RFC. Moreover, plaintiff's own testimony was not consistent with the ALJ's residual functional capacity assessment. (Tr. 40-45). Under these circumstances, the court is compelled to find that the ALJ's assessment is not supported by substantial evidence. *See Williams v. Astrue*, 2009 WL 4716027 (5th Cir. Dec. 10, 2009) (unpubl.) ("an ALJ may not rely on his own unsupported opinion as to the limitations presented by the applicant's medical conditions"); *Ripley, supra* (substantial evidence lacking where: no medical assessment of claimant's residual functional capacity, and claimant's testimony was inconsistent with ALJ's assessment); *Butler v. Barnhart*, Case Number 03-31052 (5th Cir. 06/02/2004) (unpubl.) (in the absence of medical opinion or evidence establishing that the

claimant could perform the requisite exertional demands, the ALJ's determination is not supported by substantial evidence).[4]

### III. Step Four and Remand

Because the foundation for the ALJ's step four (and alternative step five) determination was premised upon a residual functional capacity that is not supported by substantial evidence, the court further finds that the Commissioner's ultimate conclusion that plaintiff is not disabled also is not supported by substantial evidence.

### Conclusion

For the above-stated reasons,

**IT IS RECOMMENDED** that the Commissioner's decision be **REVERSED** and **REMANDED** pursuant to the fourth sentence of 42 U.S.C. § 405(g) for further proceedings consistent herewith.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS**

---

[4] The court reaches this decision without consideration of the additional medical evidence that plaintiff submitted to the Appeals Council or to this court. The court notes, however, that when Dr. Googe was finally called upon to address plaintiff's functional capacity, he opined that plaintiff should be reduced to sedentary work, with the need to elevate his leg. The Commissioner may address this evidence upon remand.

**REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED in chambers at Monroe, Louisiana, this 3rd day of December, 2012.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE